A90A1049. BISHOP v. WESTMINSTER SCHOOLS, INC.
(397 SE2d 143)

BANKE, Presiding Judge.

The Westminster Schools, Inc., brought this action against W. Kent Bishop seeking to recover approximately $6,500 in tuition allegedly owed by him pursuant to an oral promise to pay for his daughter's attendance at Westminster during the 1986-87 school year. Bishop filed an answer and counterclaim in which he admitted having made such a pledge but alleged that it was conditioned upon the occurrence of at least one of the following two events, neither of which had yet occurred: (1) The endorsement by his former wife (the child's mother) of his tuition checks made payable jointly to her and the school, or (2) the rendition of a final decision by the Georgia courts on the issue of whether he was entitled to a credit against child support for tuition payments he had previously made to the school on his daughter's behalf. Bishop further alleged in his answer that the school's claim was unenforceable "beyond the amount of $5,000, pursuant to the Georgia statute of frauds embodied in OCGA § 11-1-206." His counterclaim was predicated on the school's breach of an alleged agreement "not to take any action to enforce [his] pledge [prior to the resolution of] the issue of whether [he was] entitled to a credit against child support for said payments."

Bishop filed his original answer and counterclaim on March 21, 1988, and on April 26, 1988, the school filed a motion for judgment on the pleadings. Although Bishop never filed a response to this motion, he did file an amendment to his answer approximately a year later asserting the defense of duress. In an affidavit attached to this amendment, he averred that his daughter had suffered "psychiatric harm" as a result of the "legal entanglements" surrounding his marriage to her mother; that at a meeting with the school's president which took place at the school on January 1, 1987, the president had

threatened to expel the child "then and there" if he (the appellant) did not pledge to pay her tuition for the 1986-87 school year; and that he was forced to comply with this demand because such expulsion would have caused his daughter "irreversible psychological harm." The trial court subsequently granted the school's motion for judgment on the pleadings, and this appeal followed. *Held*:

1. At the outset, we must reject Westminster's contention that it was entitled to judgment on the pleadings based on the appellant's failure to file a response to the motion within 30 days in compliance with Rule 6.2 of the Uniform Rules for the Superior Courts. Just as "[t]here is no such thing as a 'default summary judgment,'" *McGivern v. First Capital Income Prop.*, 188 Ga. App. 716, 717 (373 SE2d 817) (1988), neither is there any such thing as a "default judgment on the pleadings." The issue in a motion for judgment on the pleadings is "'whether the undisputed facts appearing from the pleadings show the [movant] is entitled to judgment as a matter of law.' [Cit.]" *Christner v. Eason*, 146 Ga. App. 139 (245 SE2d 489) (1978). The outcome of this inquiry is not affected by whether the opposing party has or has not filed a response to the motion. Cf. *Coleman v. State Farm Mut. &c. Co.*, 192 Ga. App. 285, 288 (3) (384 SE2d 399) (1989).

2. In his counterclaim, the appellant alleges that the school committed a breach of contract by suing him for breach of contract prior to the occurrence of at least one of the alleged conditions precedent to the enforceability of his pledge. The trial court did not err in concluding that this claim was lacking in merit as a matter of law. The notion that the school would contract with the appellant to refrain from suing him for money he did not owe is ridiculous on its face, inasmuch as the duty to refrain from suing another on a meritless claim exists irrespective of any agreement. See generally OCGA § 51-7-80; *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986).

3. The appellee was also entitled to judgment on the pleadings with respect to the appellant's defense that enforcement of his pledge in any amount beyond $5,000 was barred by the Statute of Frauds set forth at OCGA § 11-1-206. This Code section applies by its terms solely to contracts "for the sale of personal property." Quite obviously, a school tuition payment is a payment for services rather than for the purchase of personal property. We are not persuaded to the contrary by the appellant's argument that a material amount of the tuition may have been for such items as "uniforms, lockers, locksets, tennis balls, papers, materials, books, supplies, tickets, meals, publications, snacks, pencils, erasers, college recommendations, admission tickets to athletic events, cultural events, etc." In the first place, § 1-206 of the UCC applies only "to choses in action, to 'general intangibles,' and to transactions excluded from Article 9 on secured

transactions." Anderson, Uniform Commercial Code (3rd ed.), § 1-206:4, p. 429. Moreover, the inclusion of such incidental items in the tuition fee clearly would not, in any event, reduce the essential character of the transaction to a sale of personal property. "When the predominant element of a hybrid contract is that of service, the [UCC] [S]tatute of [F]rauds is not applicable." Anderson, supra, § 2-201:53, p. 41. Finally, there is no question that the child completed the 1986-87 school year at Westminster, and the Statute of Frauds does not bar enforcement of a contract which has been fully performed on one side. See, e.g., *Amax, Inc. v. Fletcher*, 166 Ga. App. 789, 790 (1) (305 SE2d 601) (1983).

4. The allegations contained in the appellant's amended answer, as amplified by his attached affidavit, conclusively negate any contention that his pledge to pay his daughter's tuition was extracted from him under duress within the contemplation of OCGA § 13-5-6. As indicated above, the appellant received and accepted from the school the benefits of his pledge in that his daughter was permitted to remain there throughout the remainder of the school year. Obviously, the school was under no obligation to educate the child free of charge in order to help her deal with the emotional distress she was suffering as the result of her parents' conduct. See generally OCGA § 13-5-6; *Tidwell v. Critz*, 248 Ga. 201, 203-5 (282 SE2d 104) (1981).

5. We must conclude, however, that the trial court erred in ruling that the school was entitled to judgment on the pleadings with respect to the appellant's defense that neither of the alleged alternative conditions precedent to the enforceability of his pledge had yet occurred. While the appellee asserts in its brief on appeal that one of these conditions precedent has now in fact transpired, there is nothing in the record to support this assertion; and a motion for judgment on the pleadings may not, in any event, be based on matters outside the pleadings unless the summary judgment procedures are followed. See OCGA § 9-11-12 (c).

6. The appellee's motion for the assessment of a penalty against the appellant pursuant to OCGA § 5-6-6 for filing a frivolous appeal is necessarily, though somewhat regretfully, denied.

*Judgment reversed. Birdsong and Cooper, JJ., concur.*

DECIDED SEPTEMBER 4, 1990 —
REHEARING DENIED SEPTEMBER 18, 1990 — CERT. APPLIED FOR.

*W. Kent Bishop*, pro se.
*Howell & Whiting, James S. S. Howell, John C. Whiting*, for ap-

pellee.